UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DERRICK A. HOOVER,

                         Plaintiff,

v.                                                9:99-CV-1855
                                                (FJS/GHL)

S. HARDMAN, Dentist; J. RICKS, Superintendent; and
Mr. HYDE, Correction Officer,

                          Defendants.

_____

APPEARANCES:                               OF COUNSEL:

DERRICK A. HOOVER, 86-A-6273
Plaintiff *Pro Se*
Great Meadow Correctional Facility
P.O. Box 51
Comstock, New York 12821

HON. ELIOT L. SPITZER                       SENTA B. SIUDA, ESQ.
Attorney General of the State of New York      Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, New York 12224-0341

GEORGE H. LOWE, United States Magistrate Judge

## **REPORT-RECOMMENDATION**

      This matter has been referred to me for Report and Recommendation by the Honorable

Frederick J. Scullin, Jr., Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Local Rule N.D.N.Y. 72.3(c).  In this civil rights complaint brought under 42 U.S.C. § 1983,

plaintiff alleges that defendants were deliberately indifferent to his serious medical needs in

connection with a broken tooth and a laceration inside his mouth that he sustained while

incarcerated at Upstate Correctional Facility.  (Dkt. No. 1 at 5.)  As a result, plaintiff seeks one hundred thousand dollars ($100,000.00) in monetary relief.  (Dkt. No. 1 at 6.)

Currently before this Court is defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56.  (Dkt. Nos. 46, 48, 51.)  Defendants' motion, which plaintiff has opposed (Dkt. Nos. 54, 55), raises four issues: (1) whether plaintiff exhausted his administrative remedies as to Defendant Hyde; (2) whether Defendants Ricks and Hyde were personally involved in the alleged constitutional violations; (3) whether defendants were deliberately indifferent to a serious medical need; and (4) whether defendants are entitled to qualified immunity.

For the reasons discussed below, the undersigned reaches the following conclusions: (1) a genuine issue of material fact exists with regard to whether plaintiff exhausted his administrative remedies as to Defendant Hyde; (2) Defendant Ricks was not personally involved in the alleged constitutional violations; but a genuine issue of material fact exists with regard to whether Defendant Hyde was personally involved in those alleged violations; (3) Defendants Hartman and Ricks were not deliberately indifferent to a serious medical need; but a genuine issue of material fact exists with regard to whether Defendant Hyde was deliberately indifferent to a serious medical need; and (4) Defendants Hartman and Ricks are entitled to qualified immunity; but a genuine issue of material fact exists with regard to whether Defendant Hyde is entitled to qualified immunity.

**DISCUSSION**

This case concerns the alleged deprivation of medical care for plaintiff during a four-month[1] period in 1999 at Upstate Correctional Facility.  Generally, plaintiff claims that, from the date of injury to his front right tooth on August 6, 1999 until the date of its repair on December 7, 1999, Facility Dentist Stephen Hartman,[2] Corrections Officer Jeff Hyde, and Superintendent Thomas Ricks[3] were deliberately indifferent to his serious medical needs.  More specifically, plaintiff claims that Defendant Hartman failed or refused to treat plaintiff's injury, in some part due to the interference of Defendant Hyde and the non-responsiveness of Defendant Ricks.  (Dkt. No. 1.)  Plaintiff further claims that this deliberate indifference to his serious medical needs caused him to experience pain, headaches, infections, discoloration of his eyes, and the inability to eat properly out of fear that food might lodge in his wound or that he might bite into objects in his food.  (*Id*.)

Generally, defendants respond that Defendants Ricks and Hartman reasonably responded to plaintiff's complaints, that Defendant Hyde in no way obstructed plaintiff's treatment (or even

---

[1]	Plaintiff's complaint does not expressly cover events after October 25, 1999, because it was dated October 25, 1999 (Dkt. No. 1), and because his motion to amend his complaint was denied for failure to comply with the Local Rules (Dkt. No. 21).  However, the undersigned will liberally construe plaintiff's complaint as encompassing relevant events between October 25, 1999 and December 7, 1999, because those events are natural extensions of plaintiff's claims, plaintiff discusses those events in his opposition to defendants' motion, plaintiff is arguably time-barred from bringing those claims now, and plaintiff is proceeding *pro se*.

[2]	Although plaintiff named "S. Hardman" as a defendant, the Facility Dentist's actual name is Stephen Hartman.  (Dkt. No. 12 at 1.)

[3]	Although plaintiff named "J. Ricks" as a defendant, the Superintendent's actual name appears to be Thomas Ricks.

knew of the specifics of plaintiff's condition), and that any delay in plaintiff's treatment resulted

from his own failure to comply with prison policies and practices.  (Dkt. No. 51.)

## I.     MATERIAL FACTS

The following facts are not in dispute or are viewed most favorably to plaintiff, the non-

moving party.[4]

1.     On August 6, 1999, while plaintiff was eating dinner at Upstate Correctional

Facility, he bit into a metal object that damaged his upper front right tooth and cut his lower gum.

(Dkt. No. 1 at 4.)

2.     The damage to plaintiff's tooth consisted of the loss of a filling.  (Dkt. No. 48, Ex.

B at 3-4; Dkt. No. 49, ¶¶ 12-13.)

3.     On or about August 9, 1999, plaintiff requested a sick-call visit regarding his

dental condition.  (Dkt. No. 48, Ex. E at 7.)  On or about that same day, a nurse from the Health

Clinic made a sick-call visit to plaintiff, giving plaintiff an oral analgesic / anti-irritant called

"Orabase."  (Dkt. No. 55, Ex. W; Dkt. No. 48, Ex. E at 7.)

4.     On or about August 13, 1999, plaintiff requested a sick-call visit regarding his

dental condition.  (Dkt. No. 55, Ex. X.)  On or about that same day, the Health Clinic notified

plaintiff in writing that his request for dental services had been received, and that he was

scheduled to be evaluated by a dentist in the near future.  (*Id*.)

5.     On or about September 13, 1999, a nurse from the Health Clinic was ready to visit

plaintiff; however, plaintiff was not standing at his cell door.  (Dkt. No. 1 at 5-5a; Dkt. No. 55,

---

[4]     The undersigned notes that, while plaintiff did not file a response to defendants'
Statement of Material Facts, plaintiff is proceeding *pro se* and did dispute most of the facts at
issue in this motion through his verified complaint and his opposition papers.

Ex. A at 2.)  After the nurse had moved on to the next cell, plaintiff called after her; however, Defendant Hyde instructed her not to see plaintiff.  (*Id*.)  As a result, no nurse made a sick-call visit to plaintiff that day.  (*Id*.)

6.     As of September 13, 1999, it was the practice at Upstate Correctional Facility that, even if an inmate had previously requested medical or dental services, if that inmate was not dressed and at his cell door when sick call was announced on the cell block, he was considered to be refusing sick call.  (Dkt. No. 50, ¶ 6; *cf*. Dkt. No. 48, Ex. E at 2 [no visit because plaintiff not ready on Dec. 3, 1998], *accord*, Ex. E at 10 [Dec. 3, 1999], Ex. E at 11 [Dec. 31, 1999], Ex. E at 14 [Jan. 26 and 27, 2000], Ex. E at 15 [Dec. 18, 2000].)

7.     On or about September 14, 1999, the aforementioned nurse from the Health Clinic made a sick-call visit to plaintiff regarding his dental condition.  (Dkt. No. 1 at 5a; Dkt. No. 55, Ex. A at 2.)  During this visit, Defendant Hyde instructed the nurse not to dispense any medication to plaintiff.  (*Id*.)  During or immediately after that visit, Defendant Hyde took possession of the metal object into which plaintiff had bitten to give it to Defendant Hartman. (*Id*.)

8.     On or about September 15, 1999, plaintiff sent a letter to Defendant Ricks demanding a reprimand of Defendant Hyde for interfering with plaintiff's access to medical care on September 13, 1999 and September 14, 1999.  (Dkt. No. 55, Ex. H.)

9.     On or about September 20, 1999, plaintiff requested a sick-call visit regarding his dental condition.  (Dkt. No. 48, Ex. E at 8.)  He was seen that day by Defendant Hartman, who diagnosed his injury and scheduled his operative treatment.  (Dkt. No. 55, Ex. A at 3; Dkt. No. 51, Ex. 1 at 3.)

10.     On or about September 23, 1999, plaintiff sent a letter to the Inmate Grievance Resolution Committee ("IGRC") complaining about the prison's treatment of his dental condition, including Defendant Hyde's "impeding" plaintiff's medical treatment and closing the window on the door to plaintiff's cell "for no apparent reason."  (Dkt. No. 55, Ex. E)

11.     On or about September 29, 1999, plaintiff filed an Inmate Grievance Complaint ("IG Complaint") with the IGRC, regarding the prison's treatment of his dental condition.  (Dkt. No. 55, Ex. F.)  This IG Complaint referenced his repeated requests for medical attention but did not mention Defendant Hyde.  (*Id*.)

12.     On or about September 30, 1999, plaintiff sent a letter to Defendant Ricks complaining of the prison's treatment of his dental condition.  (Dkt. No. 55, Ex. I.)

13.     Following receipt of this letter, Defendant Ricks communicated plaintiff's complaints to Defendant Hartman, requested that Defendant Hartman take appropriate action and report back regarding the results, received reports from Defendant Hartman regarding plaintiff's condition, and communicated to plaintiff what he was doing and what he had learned.  (Dkt. No. 48, Ex. C [memo dated Sept. 5, 1999 from Defendant Ricks to plaintiff; memo dated Sept. 5, 1999 from Defendant Ricks to Defendant Hartman; memo dated Nov. 10, 1999 from Defendant Hartman to Defendant Ricks; memo dated Nov. 12, 1999 from Defendant Ricks to plaintiff].)

14.     On or about November 5 and 6, 1999, plaintiff requested a sick-call visit regarding his dental condition.  (Dkt. No. 48, Ex. E at 9.)  A nurse from the Health Clinic made that sick-call visit to plaintiff on or about November 6, 1999.  (*Id*.)

15.     On November 16, 1999, plaintiff became the new cell-mate of inmate Paul Marrero.  (Dkt. No. 55, Ex. V.)  According to Mr. Marrero, "[f]rom that day plaintiff has been

giving me his meals because of a broken tooth he sustained from a metal object that was in his food." *Id*. Mr. Marrero further states, "I also has [sic] been signing up for sickcall to get medication for him, because it seems as thought they certain officers [sic] do not want to his injury [sic] and refuse to let the nurse serve him any medication." *Id*. Finally, Mr. Marrero states, "Also on November 16, 1999 some one from the dental staff came to our cell, and told inmate Hoover he was going to be on a callout for the dentist on November 22. And he is still waiting to go to the dentist." *Id*.[5]

16.     On or about November 16, 1999, Defendant Hartman saw plaintiff regarding his dental condition, dispensing medication to plaintiff and scheduling his operative treatment. (Dkt. No. 51, Ex. 1 at 3-4; Dkt. No. 55, Ex. K at 7, 10-11, 15-16.)

17.     Prior to November 22, 1999, plaintiff complained orally to at least three prison employees about the prison's treatment of his dental condition. (Dkt. No. 55, Ex. J [referring to such communications with prison employees Santore, Bezio and Sargents], Ex. G [referring to such communications with Santore, Bezio and prison's Chief Administrator].) On or about that same day, plaintiff sent another letter to Defendant Ricks complaining of the prison's treatment of his dental condition. (Dkt. No. 55, Ex. J.)

18.     Following receipt of this letter, Defendant Ricks communicated plaintiff's complaints to Defendant Hartman, requested that Defendant Hartman take appropriate action and report back regarding the results, received reports from Defendant Hartman regarding plaintiff's

---

[5]     The Court notes that Mr. Marrero's affidavit is undated. While Fed. R. Civ. P. 56(e) sets forth formal requirements of affidavits submitted in opposition to a motion for summary judgment, the Court may nonetheless consider an undated affidavit if, as here, the opposing party has not objected to it. *See Gladstone Ford v. New York City Transit Authority*, No. 01-9091, 2002 WL 1940967, *5 (2d Cir. Aug. 21, 2002) (citations omitted).

condition, and communicated to plaintiff what he was doing and what he had learned.  (Dkt. No. 48, Ex. D [memo dated Nov. 23, 1999 from Defendant Ricks to plaintiff; memo dated Nov. 26, 1999 from First Deputy Superintendent to Defendant Hartman, bearing handwritten notation "Dec 7 @ 1 pm"; memo dated Dec. 1, 1999 from Defendant Ricks to plaintiff].)

19.     On or about November 23, 1999, plaintiff filed another IG Complaint with the IGRC, regarding the prison's treatment of his dental condition.  (Dkt. No. 55, Ex. D.)  This IG Complaint referenced his repeated requests for medical attention but did not mention Defendant Hyde.  (*Id.*)

20.     Between August 6, 1999 and December 7, 1999, plaintiff was visited by medical personnel eleven times regarding various medical conditions, including his dental condition. (Dkt. No. 48, Ex. E at 8-12 [showing visits by nurses on Aug. 9, Aug. 26, Aug. 28, Sept. 20, Sept. 8, Nov. 5, Nov. 6, Nov. 16, and Dec. 3, 1999]; Dkt. No. 51, Ex. 1 at 3-4 [showing visits by Defendant Hartman on Sept. 20 and Nov. 16, 1999]; Dkt. No. 55, Ex. K at 7, 10-11, 15-16 [showing visit by Defendant Hartman on Nov. 16, 1999].)

21.     Two of plaintiff's medical records indicate that plaintiff experienced dental cold sensitivity or dental "pain" during this time period.  (Dkt. No. 51, Ex. 1 at 3 [entry for Sept. 20, 1999]; Dkt. No. 48, Ex. E at 9 [entries for Nov. 5 and 6, 1999].)

22.     Three of plaintiff's medical records indicate that plaintiff experienced no dental pain during this time period.  (Dkt. No. 48, Ex. B at 4 [noting "no pain" on Nov. 16, 1999]; Dkt. No. 49, ¶ 11 [verifying that "plaintiff stated he had no pain" on Nov. 16, 1999]; *cf.* Dkt. No. 48, Ex. B at 4 [noting "no anesth at pt. request" on Dec. 7, 1999]; Dkt. No. 49, ¶ 12 [verifying that "Plaintiff requested no anesthesia for this procedure" on Dec. 7, 1999].)

23.     None of plaintiff's medical records indicate any complaints by plaintiff of headaches or extreme pain.  (Dkt. No. 48, Ex. E at 8-10.)

24.     On December 7, 1999, Defendant Hartman successfully replaced plaintiff's filling.  (Dkt. No. 48, Ex. B at 3-4; Dkt. No. 49, ¶¶ 12-13.)

25.     Plaintiff's dental records from after December 7, 1999 indicate that plaintiff has experienced no further problems with that tooth and that plaintiff has had "no complaints" regarding that tooth.  (Dkt. No. 48, Ex. B at 4, 6.)

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson v. Gijvoje*, 896 F.2d 716, 720 (2d Cir. 1999) (citations omitted).  "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion."  *Id*.  However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  At that point, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.  *Id*.

Additionally, because plaintiff is proceeding *pro se*, he is afforded special latitude and his pleadings are read liberally and interpreted to raise the strongest possible arguments.  *Evering v. Rielly*, No. 98-6718, 2001 U.S. Dist. LEXIS 15549, at *17 (S.D.N.Y. Sept. 28, 2001) (citing *McPherson v. Coombe*, 174 F.3d 276, 280 [2d Cir. 1999] and quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 [2d Cir. 1994]).

III.   **ANALYSIS**

   A.   **Whether Plaintiff Exhausted His Administrative Remedies as to Defendant Hyde.**

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e.  The Department of Correctional Services ("DOCS") has available a well-established three-step grievance program:

> First, an inmate is to file a complaint with the Grievance Clerk.  An inmate grievance resolution committee ("IGRC") representative has seven working days to informally resolve the issue.  If there is no resolution, then the full IGRC conducts a hearing and documents the decision.  Second, a grievant may appeal the IGRC decision to the superintendent, whose decision is documented.  Third, a grievant may appeal to the central office review committee ("CORC"), which must render a decision within twenty working days of receiving the appeal, and this decision is documented.

*White v. The State of New York*, No. 00-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002) (citing N.Y. Comp. Codes R. & Regs. Tit. 7, § 701.7).  Generally, if plaintiff has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies.  *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 347-48 (S.D.N.Y. 2002); *Reyes v. Punzal*, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002).

However, the Second Circuit has recently made clear that a plaintiff may successfully refute a defendant's contention of failure to exhaust administrative remedies where those remedies were "unavailable" to plaintiff or where "special circumstances" justify plaintiff's

failure to comply with procedural requirements. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). *See, e.g., Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004) (failure by prison to implement prior grievance rulings in plaintiff's favor rendered plaintiff's administrative remedies "unavailable"); *Johnson v. Testman*, 380 F.3d 691, 696-97 (2d Cir. 2004) ("special circumstances" include plaintiff's reasonable confusion regarding grievance process); *Giano v. Goord*, 380 F.3d 670, 676, 679 (2d Cir. 2004) ("special circumstances" include plaintiff's reasonable belief that he was pursuing his only available administrative remedies).[6]

Here, Defendant Hyde argues that plaintiff's claim against him must be dismissed because plaintiff's only IG Complaint (dated Nov. 23, 1999) failed to mention him. (Dkt. No. 51 at 3-4.)[7] Plaintiff responds that (1) he was excused from complying with the exhaustion requirement because no working grievance process was available at the recently opened Upstate Correctional Facility when he filed his grievance complaints, and in any event (2) he fulfilled the exhaustion requirement informally as permitted by 7 N.Y.C.R.R. § 7.11 and *Marvin v. Goord*, 255 F.3d 40, 43, n. 3 (2d Cir. 2001). (Dkt. No. 55 at 1-11.)

---

[6]     *See also O'Connor v. Featherston*, No. 01 Civ. 3251, 2002 WL 818085, *2-3 (S.D.N.Y. Apr. 29, 2002) ("While [plaintiff] failed to exhaust the technical requirements of DOCS' grievance procedures, it cannot be said that his efforts to comply, which included a FOIA request, an appeal of the denial of that request, several inquiries to various divisions within DOCS, were not substantial or reasonable."); *Rodriguez v. Hahn*, No. 99 Civ. 11663, 2000 WL 1738424, *2 (S.D.N.Y. Nov. 22, 2000) (concluding that plaintiff's letters, including those to grievance committee, "while possibly not constituting grievances as defined by state law . . . evidence a reasonable attempt to exhaust, especially where [plaintiff] has tried to adhere to the DOCS's requirements regarding the filing of grievances and now claims that . . . corrections officers never filed some of his grievances.").

[7]     In fact, plaintiff's November 23, 1999 IG Complaint was not the first grievance complaint he filed regarding his alleged deprivation of dental care: plaintiff had filed a previous grievance complaint on the subject on September 27, 1999, although that complaint too does not reference Defendant Hyde. (Dkt. No. 55, Ex. F.)

11

Viewing all factual inferences in the light most favorable to plaintiff, I must reject Defendant Hyde's argument.  First, plaintiff's assertion that he exhausted his administrative remedies as to his claim against Defendant Hyde is supported by plaintiff's letter to the IGRC dated September 23, 1999, which mentions Defendant Hyde.  (Dkt. No. 55, Ex. E.)  It also is supported by plaintiff's letter to Defendant Ricks dated September 15, 1999, in which plaintiff demands that Defendant Ricks reprimand Defendant Hyde.  (Dkt. No. 55, Ex. H.)

Second, plaintiff swears that he filed one or more other IG Complaints referencing Defendant Hyde.  (Dkt. No. 55, Ex. A at 2.)  Plaintiff argues implicitly that somehow these IG Complaints were lost in the system.  (Dkt. No. 55 at 5-6, & Ex. A at 4.)  In support of this claim, plaintiff submits his own sworn testimony and the sworn testimony of two fellow inmates that the IGRC had not been operating adequately in the first few months after Upstate Correctional Facility started receiving prisoners in or around July 1999.  (Dkt. No. 55, Exs. A-C.)  This testimony is consistent with the lack of any record evidence that plaintiff's September 27, 1999 IG Complaint was investigated (or even filed) by an Inmate Grievance Program ("IG Program") representative, or that a hearing was held by the IGRC, within seven days as required by 7 N.Y.C.R.R. § 701.7(a).  (Dkt. No. 55, Ex. F; Dkt. No. 47.)

Because of these alleged failures by the IG Program, plaintiff appealed by letter directly to Defendant Ricks on September 30, 1999.  (Dkt. No. 55, Ex. I.)  Granted, plaintiff did not expressly reference Defendant Hyde in this letter.  Nor did he send this letter before the IG Program's seven-day grace period had run.  Nor did he subsequently appeal this complaint to CORC.  However, resolving all ambiguities and inferences in the light most favorable to plaintiff, for purposes of this motion, the undersigned finds that Defendant Hyde has not met his

12

burden of proving failure to exhaust, especially given the reasonableness of plaintiff's repeated attempts to pursue his administrative remedies, the newness (at the time) of the Upstate Correctional Facility, and the alleged failures by its IG Program.

For these reasons, I find that a triable issue of fact exists with regard to whether plaintiff exhausted his administrative remedies as to Defendant Hyde.

### B. Whether Defendants Ricks and Hyde Were Personally Involved in the Alleged Constitutional Violations.

In the Second Circuit, a defendant's personal involvement in the alleged unlawful conduct is a prerequisite for a finding of liability in a Section 1983 action. *See McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). The standards of what constitutes personal involvement differ for supervisory prison officials (such as superintendents) and for subordinates (such as guards).

Subordinates are personally involved in a constitutional violation only if they directly participated in the alleged constitutional violation. *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986). Supervisory officials, on the other hand, are personally involved in a constitutional violation if (1) they directly participated in that violation, (2) they failed to remedy that violation after learning of it through a report or appeal, (3) they created, or allowed to continue, a policy or custom under which the violation occurred, (4) they were grossly negligent in managing subordinates who caused the violation, or (5) they exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Williams*, 781 F.2d at 323-24; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong).

Thus, while the standard for personal involvement is broader for a supervisory official

than for a subordinate, supervisory officials are not personally involved in a constitutional deprivation simply by virtue of the actions of subordinates. *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987). In addition, personal involvement by a supervisory official requires more than simply receiving letters regarding an alleged constitutional violation. *See*, *e.g.*, *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) ("[Plaintiff's] letters and [the DOCS Commissioner's] response do not demonstrate the requisite personal involvement on [the DOCS Comissioner's] part.").

### 1.    Defendant Ricks

Here, even viewing all inferences and ambiguities most favorably to plaintiff, there is no evidence that Defendant Ricks was personally involved in the alleged constitutional violation. No evidence (or even allegation) exists that Defendant Ricks directly participated in that alleged violation. (Dkt. No. 1; Dkt. No. 55) No evidence exists that Defendant Ricks failed to remedy

that alleged violation, after learning of it through a report[8] or appeal.[9]  No evidence exists that

Defendant Ricks created, or allowed to continue, a policy or custom under which that alleged

violation occurred.[10]  No evidence exists that Defendant Ricks was grossly negligent[11] in

---

[8]      Plaintiff alleges he sent Defendant Ricks more than three letters.  (Dkt. No. 55, Exs. H-J.)  With regard to the first such letter, to which Defendant Ricks did not respond, no personal involvement arose.  *See Greenwaldt v. Coughlin*, No. 93 Civ. 6551, 1995 U.S. Dist. LEXIS 5144, *11 (S.D.N.Y. Apr. 19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.").  With regard to the subsequent two letters, to which Defendant Ricks did respond, again no personal involvement arose.  *See Ramos v. Artuz*, No. 00 Civ. 0149, 2001 U.S. Dist. LEXIS 10327, *23-24 (S.D.N.Y. July 25, 2001) (superintendent had no personal involvement where he responded to plaintiff's letters by forwarding them to health service administrator and advising plaintiff he had done so). Defendant Ricks involved himself in plaintiff's problem merely to the extent that he referred plaintiff's letters to Defendant Hartman to take appropriate action, and informed plaintiff of that fact and the results.  *Compare Sealey*, 116 F.3d at 51 (DOCS Commissioner was not personally involved where he referred plaintiff's complaint letter to prison official for determination and informed plaintiff of the decision rendered) *with Ramos*, 2001 U.S. Dist. LEXIS 10327 at *27-28; (health service administrator's involvement went beyond merely receiving letters where he defended a hospital clinic's medical treatment of plaintiff, admitted that a delay in treatment was "unquestionably long," and demonstrated detailed knowledge about plaintiff's condition).

[9]      Plaintiff alleges that Defendant Ricks failed to remedy the alleged constitutional violation after being presented with plaintiff's appeal from a disciplinary hearing.  (Dkt. No. 55, Ex. A at 15.)  However, the issue during that appeal was whether plaintiff failed to comply with the direct order of Corrections Officer Ashlaw in November 1999.  (Dkt. No. 55, Ex. K.)  Thus, Defendant Ricks was not notified of the constitutional violation alleged in this action, during plaintiff's appeal.  *See Rabb*, 1998 U.S. Dist. LEXIS 6311 at *13 ("[T]he court has found no constitutional violation related to plaintiff's hearing to which [the director of the SHU] might have been alerted by plaintiff's appeal [to that director].").

[10]      Surely, the alleged conduct of Defendants Hyde and Hartman could not have constituted a "policy or custom" under which deliberate indifference to plaintiff's alleged serious medical need occurred.  Rather, the only alleged policy or custom in this case appears to be the prison's practice of not responding to a sick call of a prisoner who is not ready when that response is to be made.  However, plaintiff does not allege, or introduce any evidence, that Defendant Ricks created that practice, or–knowing about it–allowed it to continue.

[11]      *Gross negligence* is defined as "a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party."  *Rivers v. O'Brien*, 83 F.

managing subordinates who caused that alleged violation.  No evidence exists that Defendant

Ricks exhibited deliberate indifference[12] to the rights of plaintiff by failing to act on information

indicating that the alleged violation was occurring.

Because of Defendant Ricks' lack of personal involvement in the alleged constitutional

violations, I recommend that Defendant Ricks' motion for summary judgment be granted.

## 2.       Defendant Hyde

With regard to Defendant Hyde, defendants argue that, for a *non-medical* subordinate

prison employee to be personally involved in any allegations of deliberate indifference to a

plaintiff's serious medical needs, that prison employee had to "intentionally delay[] access to

medical care when the inmate was in extreme pain and ha[d] made his medical problem known

to [the prison official]," citing *Baumann v. Walsh*, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999).

*Baumann* does not appear to support defendants' position because that case considered intent and

knowledge in discussing whether a prison shop *supervisor* acted with *deliberate indifference* (not

whether a *prison guard* was *personally involved* in the alleged unlawful conduct).  *Id*.  Rather,

the level of knowledge necessary for a prison guard's personal involvement appears to be mere

awareness that plaintiff was in need of "medical assistance."  *Cf. MacAllister v. New York City

Police Department*, 49 F. Supp. 2d 688, 701 (S.D.N.Y. 1999) (concluding that three police

officers had no personal involvement in alleged denial of plaintiff's medical treatment because

Supp.2d 328, 334 (N.D.N.Y. 2000) (Section 1983 case) (citations omitted).  Plaintiff's
allegations of Defendant Ricks' conduct in relation to Defendants Hyde and Hartman's conduct
do not rise to the level of gross negligence.  In any event, no facts exist indicating such gross
negligence.

[12]       *See*, *infra*, Part III.C. (defining term).

they "were [n]ever made aware that [plaintiff] was in need of medical assistance.").

In any event, here Defendant Hyde acknowledges that "[a]mong my duties at the time [I was a block officer assigned to the block where plaintiff was housed] was to escort medical and dental personnel through the block to the cells of inmates who had requested medical or dental services." (Dkt. No. 50, ¶ 3.) During the fall of 1999, representatives of the Health Clinic visited plaintiff seven times regarding his dental condition. (Dkt. No. 48, Ex. E at 8-12; Dkt. No. 51, Ex. E at 3-4; Dkt. No. 55, Ex. K at 7, 10-11, 15-16.) Plaintiff swears that Defendant Hyde instructed a nurse from the Health Clinic not to see plaintiff on or about September 13, 1999, and not to dispense medication to plaintiff on or about September 14, 1999. (Dkt. No. 55, Ex. A, ¶¶ 6-8.) Drawing all inferences and ambiguities in the light most favorable to plaintiff, I find that, for purposes of this motion, there are triable issues of fact as to whether Defendant Hyde was *personally involved* in the alleged constitutional violations.

**C.    Whether Defendants Were Deliberately Indifferent to a Serious Medical Need.**

"To establish an unconstitutional denial of medical care, a plaintiff must prove a deliberate indifference to serious medical needs." *Evering*, 2001 U.S. Dist. LEXIS 15549 at *29 (citing *Estelle v. Gamble*, 429 U.S. 97 [1976] and *Chance v. Armstrong*, 143 F.3d 698, 702 [2d Cir. 1998]). This claim's first prong (deliberate indifference) is subjective while the second prong (serious medical need) is objective. *Evering*, 2001 U.S. Dist. LEXIS 15549 at *29 (citing *Hathaway v. Coughlin*, 37 F.3d 63, 66 [2d Cir. 1994]).

Taking the second prong first, "[t]o be sufficiently serious the deprivation must contemplate 'a condition of urgency, one that may produce death, degeneration or extreme

17

pain.'" *Evering*, 2001 U.S. Dist. LEXIS at *29 (quoting *Hathaway*, 27 F.3d at 66 [citation omitted]); *see also Chance*, 143 F.3d at 702 (citations omitted).  Stated another way, "[a] serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary or wanton infliction of pain." *Evering*, 2001 U.S. Dist. LEXIS at *29 (citing *Harrison v. Barkley*, 210 F.3d 132, 136 [2d Cir. 2000]).  Specifically, "[a] cognizable claim regarding inadequate dental care . . . can be based on various factors, such as the pain suffered by the plaintiff . . . the deterioration of the teeth due to a lack of treatment . . . or the inability to engage in normal activities." *Chance*, 143 F.2d at 703 (citations omitted).

Taking the first prong next, plaintiff must show that the charged official acted with "a sufficiently culpable state of mind." *Evering*, 2001 U.S. Dist. LEXIS 15549 at *30 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 [1991]); *Hathaway*, 37 F.3d at 66 (citation omitted).  "'The required state of mind, equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.'" *Evering*, 2001 U.S. Dist. LEXIS 15549 at *30 (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 [2d Cir. 1998] [internal quotation marks and citation omitted]); *see also Chance*, 143 F.3d at 702 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 [1994]).

In short, to satisfy this first prong, "[t]he conduct alleged must be 'repugnant to the conscience of mankind.'" *Tomarkin v. Ward*, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting *Estelle*, 429 U.S. at 104).  "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the

18

fact that a prisoner might prefer a different treatment does not give rise to an Eight Amendment violation." *Chance*, 143 F.2d at 703 (citing *Dean v. Coughlin*, 804 F.2d 207, 215 [2d Cir. 1986]); *see also Evering*, 2001 U.S. Dist. LEXIS 15549 at *33-34 (citations omitted); *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992) (citations omitted). "[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance*, 143 F.3d at 703 (citing *Estelle*, 429 U.S. at 105-06).

### 1.    Serious Medical Need

On August 6, 1999, plaintiff suffered a lost filling in his upper front right tooth and a cut on his lower gum.  (Dkt. No. 48, Ex. B at 3-4; Dkt. No. 49, ¶¶ 12-13.)  In his complaint, plaintiff alleges that, as a result of these untreated injuries, he experienced "headaches, infections, discoloration of the eyes . . . pain, and [the inability to] eat properly, in fear of food lodging in open area or finding more non-food items within the meal."  (Dkt. No. 1.)  Similarly, in his opposition to defendants' motion for summary judgment, plaintiff alleges that an infection "started to develop" from his injuries.  (Dkt. No. 55 at 23, Ex. A at 3.)  He further alleges that "[p]laintiffs' [sic] injuries were a condition of urgency that rapidly produced a degeneration of health, extreme pain, headaches, and an eye infection, for which he had to be transported to an outside facility to be examined by a specialist, and subjected to a host of eye-drops, in conjunction with pills.  (See, Pl. mot. in opp. to def. mot. to dismiss)."  (Dkt. No. 55 at 26.)

With regard to his claims of headaches, eye discoloration, and infections, no evidence exists of: (1) the dates, duration and severity of these alleged headaches, the commencement of

which apparently predates his injury;[13] (2) the source or precise date(s) of this eye discoloration; or (3) the location, source, and dates of these alleged infections.  (Dkt. No. 48, Ex. E at 10-15; Dkt. No. 55 at 23, Ex. A at 3; Dkt. No. 16 at 2, 4.)[14]

With regard to his claim of being unable to eat properly, plaintiff offers the affidavit of his cell-mate, Raul Marrero, who swears that, since Marrero's arrival at plaintiff's cell on November 16, 1999, plaintiff "has been giving me his meals because of a broken tooth he sustained from a metal object that was in his food."  (Dkt. No. 55, Ex. V at 1.)

With regard to his claim of pain, plaintiff swears in his affidavit in opposition to defendants' motion for summary judgment that he experienced pain as a result of the delayed treatment of his injuries (although he does not contend that this pain was "extreme").  (Dkt. No. 55, Ex. A at 3.)  This assertion is supported by some of plaintiff's medical records, which indicate he did experience some pain and cold sensitivity,[15] although some of plaintiff's other

---

[13]      (Dkt. No. 48, Ex. E at 4-6 [entries for June 4,  June 24, and July 14, 1999].)

[14]      In his affidavit in opposition to defendants' prior motion to dismiss, plaintiff asserts (without any support) that his tooth infection somehow resulted in the discoloration and the infection of his left eye; and that for that eye infection an unidentified physician at some point after December 7, 1999 prescribed him Zyrtec, Artificial Tears, Optics and Crolom.  (Dkt. No. 16 at 2, 4.)  It bears noting, however, that these prescriptions are allergy medicines (not antibiotics) and that plaintiff's medical records do not indicate in any way that his dental condition *caused* his eye condition.  (Dkt. No. 48, Ex. E at 7-15 [medical records between August 4, 1999 and February 18, 2000].)

[15]      (Dkt. No. 48, Ex. E at 7 [plaintiff was given "Orabase for dental pain"]; Dkt. No. 48, Ex. E at 9 ["pain"]; Dkt. No. 51, Ex. 1 at 3 [referring to cold sensitivity]; Dkt. No. 48, Ex. E at 9 [referring to cold sensitivity].)

20

medical records indicate he did not experience pain.[16]

While these facts may well not be persuasive at trial, the undersigned finds they are enough to create a genuine issue of fact about whether plaintiff had a serious medical need. This conclusion is supported by plaintiff's medically diagnosed need of a filling, combined with his evidence of cold sensitivity, some pain, and difficulty eating.[17]  In addition, although a contrary argument might be fashioned based on cases from other circuits,[18] I find those cases

---

[16]    (Dkt. No. 48, Ex. B at 4 ["no pain"]; Dkt. No. 49, ¶ 11 ["plaintiff stated he had no pain"]; Dkt. No. 48, Ex. B at 4 ["no anesth at pt. request"]; Dkt. No. 49, ¶ 12 ["Plaintiff requested no anesthesia for this procedure"].)

[17]    *See Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) ("[B]ecause a tooth cavity will degenerate with increasingly serious implications if neglected over sufficient time, it presents a "serious medical need" within the meaning of our case law.") (citation omitted); *Dean v. Coughlin*, 623 F. Supp. 392, 404 (S.D.N.Y. 1985) (holding that "dental needs–for fillings, crowns, and the like–[were] serious medical needs" where inmates needing these services testified to pain and discomfort, many suffered serious health consequences as a result of defendants' failure to treat them including the unnecessary loss of a tooth and the loss of 15 pounds while awaiting dentures), *vacated on other grounds*, 804 F.2d 207 (2d Cir. 1986); *Reynolds v. Ternullo*, No. 82 Civ. 4018, 1985 U.S. Dist. LEXIS 17469, *5 (S.D.N.Y. July 26, 1985) ("[Plaintiff's] allegations of increased tooth sensitivity and attendant pain experienced over an extended period of time identify a medical need which a reasonable person would consider to be serious; at a minimum, it certainly could be said to have caused [plaintiff] some discomfort. Thus [plaintiffs'] complaint meets the first prong of the *Estelle* test.").

[18]    *See, e.g., Martin v. Tyson*, 845 F.2d 1451, 1457-58 (7th Cir. 1988) (granting summary judgment to defendant where plaintiff broke tooth due to rock in food where no evidence existed that plaintiff mentioned tooth or complained of pain to doctor during over five-month delay in treatment); *Tyler v. Rapone*, 603 F. Supp. 268, 271-72 (E.D. Pa. 1984) (granting summary judgment to defendant despite two-week delay in treatment of toothache, where plaintiff conceded that his condition was not serious); *cf. Williams v. Washington*, No. 96 C 0704, 1997 U.S. Dist. LEXIS 5256, *9 (N.D. Ill. Apr. 15, 1997) (granting motion to dismiss, where allegation of cut on inside of mouth did not state claim for "serious medical need" because plaintiff did not allege that the one-day delay in treatment injured him).

distinguishable,[19] and, in any event, not controlling.

### 2.    Deliberate Indifference

#### (a)    Defendant Hartman

Regarding plaintiff's claim against Defendant Hartman, no evidence exists that any delay in treatment by Defendant Hartman rose to a level equivalent to criminal recklessness.  *See Evering*, 2001 U.S. Dist. LEXIS 15549 at *30.  Defendant Hartman's knowledge that plaintiff needed a filling and his delay in replacing that filling (which apparently caused plaintiff to experience cold sensitivity, some pain, and difficulty eating) did not amount to knowledge of, and disregard of, "an excessive risk to inmate health or safety," *id.*, especially considering (1) the lack of any evidence that Defendant Hartman knew of plaintiff's apparent difficulty in eating,[20] (2) the lack of any evidence that Defendant Hartman's treatment of plaintiff deviated from reasonable medical practice, and (3) the fact that plaintiff was seen by health care providers routinely during the delay in treatment.  *See Reyes v. Gardener, et al.*, No. 02-0243, 2004 U.S. App. LEXIS 5672, *4 (2d Cir. March 24, 2004) (no deliberate indifference where plaintiff offered no evidence that defendants' decision to conservatively prescribe pain medication

---

[19]      More factually analogous cases from other circuits include *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (three-week delay in dental treatment, together with proof of suffering, created issue of fact to defeat defendant's motion for summary judgment), *Fields v. Gander*, 734 F.2d 1313, 1314-15 (8th Cir. 1984) (three-week delay in treatment of infected tooth, together with plaintiff's sworn statement that he indicated "severe pain" to sheriff, created issue of fact to defeat defendant's motion for summary judgment), and *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (plaintiff stated claim for "serious medical need" where he alleged that his loss of dentures caused his bleeding gums, broken teeth and inability to eat properly).

[20]      (Dkt. No. 55, Ex. A at 3 [not asserting such knowledge], Ex. V [not asserting such knowledge].)  Plaintiff does not even allege or argue that Defendant Hartman knew of this alleged difficulty.  (Dkt. No. 1; Dkt. No. 55 at 26-27.)

deviated from reasonable medical practice for the treatment of his condition); *Hernandez v. Keane, et al.*, 341 F.3d 137, 141, 146 (2d Cir. 2003) (no deliberate indifference where–during periods of delay in treatment for bullet fragments embedded in his hand, which caused plaintiff "excruciating" and "extreme" pain–plaintiff was being either evaluated for surgery or treated for other conditions); *Hodge v Coughlin*, No. 92 Civ. 0622, 1994 WL 519902, *1, 2, 11 (S.D.N.Y. Sept. 22, 1994) (no deliberate indifference where--during short periods of delay in treatment for herpes, which caused plaintiff "severe pain" in his eye and face--plaintiff was seen regularly by health care providers), *aff'd*, 52 F.3d 310 (2d Cir. 1995).

Nor was this delay in treatment "repugnant to the conscience of mankind," *Tomarkin*, 534 F. Supp. at 1230, considering the above-stated facts, the delays one commonly experiences in scheduling dental appointments even outside of prison, and the dental needs of the other prisoners Dr. Hartman had to serve. *See Hernandez*, 341 F.3d at 146 (taking into account the fact that "most of [the] delay was caused by factors outside defendants' control" in evaluating whether defendants acted with deliberate indifference); *Ross*, 784 F. Supp. at 45, 47 (taking into account "the needs of the institution" in evaluating the propriety of plaintiff's treatment, and concluding that defendants' actions did not "offend accepted standards of decency"). As the Second Circuit has explained,

> It must be remembered that the State is not constitutionally obligated, much as it may be desired by inmates, to construct a perfect plan for dental care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls. [A] correctional facility is not a health spa, but a prison in which convicted felons are incarcerated. Common experience indicates that the great majority of prisoners would not in freedom or on parole enjoy the excellence in dental care which plaintiff[] understandably seeks . . . . We are governed by the principle that the objective is not to impose

23

> upon a state prison a model system of dental care beyond average
> needs but to provide the minimum level of dental care required by the
> Constitution. . . .   The Constitution does not command that inmates be
> given the kind of medical attention that judges would wish to have for
> themselves . . . .   The essential test is one of medical necessity and not
> one simply of desirability.

*Dean*, 804 F.2d at 215 [internal quotations and citations omitted].

Based upon the foregoing, and viewing all inferences and ambiguities most favorably to plaintiff, there is no evidence that Defendant Hartman was deliberately indifferent to plaintiff's medical needs.  Therefore, I recommend that summary judgment be granted in favor of Defendant Hartman.

### (b)   Defendant Ricks

Regarding Defendant Ricks (and Defendant Hyde), for *non-medically trained* prison personnel to have been deliberately indifferent to a plaintiff's serious medical needs, they had to have "intentionally delayed access to medical care when the inmate was in extreme pain and ha[d] made his medical problem known to the attendant prison personnel."  *Baumann*, 36 F. Supp. 2d at 512 (citing *Hodge*, 1994 WL 519902 at *11 [citing cases]).

Here, even if plaintiff had experienced *extreme* pain and Defendant Ricks had read plaintiff's letters closely enough to have known of plaintiff's medical condition, no evidence exists that Defendant Ricks intentionally delayed plaintiff's access to medical care.  To the contrary, all the evidence suggests that Defendant Ricks pursued, and was assured of, plaintiff's reasonably prompt access to medical care.  Notably absent from plaintiff's most relied-upon source of evidence (his own affidavits) is an assertion that Defendant Ricks caused any delay in

plaintiff's treatment or that he did so intentionally.[21]

Therefore, I recommend that summary judgment be granted in favor of Defendant Ricks on the ground that there is no evidence that he was deliberately indifferent to plaintiff's medical needs.[22]

### (c)    Defendant Hyde

Viewing any ambiguities or inferences in the light most favorable to plaintiff, a triable issue of fact exists as to whether Defendant Hyde was deliberately indifferent to plaintiff's medical needs.  On or about September 13, 1999, Defendant Hyde instructed a nurse not to see plaintiff, and that nurse followed his instruction.  Approximately a day later, he instructed the same nurse not to dispense medication to plaintiff, and again the nurse followed his instruction. If these allegations are true, as I must accept them to be at this stage, Defendant Hyde intentionally delayed plaintiff's access to medical care.

It is true that approximately a week after Defendant Hyde instructed the nurse not to see plaintiff or dispense medication to him, plaintiff was seen by the dentist, Defendant Hartman, who diagnosed the problem and scheduled operative treatment.  It is arguable, therefore, that the delayed access to medical care caused by Defendant Hyde was *de minimis* and not of constitutional dimension.  However, cases supporting that argument do not involve the sort of

---

[21]       (Dkt. No. 55, Ex. A; Dkt. No. 16 at 4-8.)

[22]       As noted above at Part III.B.1., I also have recommended that summary judgment be granted in favor of Defendant Ricks on the separate and independent ground that he was not personally involved in the alleged constitutional violation.

physical pain plaintiff alleged he experienced here.[23]  Rather, the severity of a delay must be viewed in light of the level of pain experienced during that delay, and under the circumstances this assessment must be made by a trier of fact.[24]  Thus, a triable issue of fact exists as to Defendant Hyde's deliberate indifference to plaintiff's serious medical needs, I recommend that the motion for summary judgment be denied as to him.

### D.     Whether Defendants Are Entitled to Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams*, 781 F.2d at 322 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]).  In determining whether a particular right was *clearly established*, courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S.

---

[23]     *See Danley v. Borg*, No. 92-15773, 1993 U.S. App. LEXIS 10590, *2-3 (9th Cir. Apr. 27, 1993) (male prisoner's psychological stress and anxiety during two-month delay between time lump under breast was detected and operation to remove lump was *de minimis*); *Burrascano v. Levi*, 452 F. Supp. 1066, 1069 (D. Md. 1978) (two-day delay in treatment of mild hypertension was *de minimis*).

[24]     *Id.  See also*, *supra*, cases cited in notes 16-18 (deciding whether injury constituted serious medical need based on plaintiff's level of pain and duration of pain).

962 (1992).[25]   Regarding the issue of whether *a reasonable person would have known* he was

violating such a clearly established right, this "objective reasonableness"[26] test is met if "officers

of reasonable competence could disagree on [the legality of defendant's actions]."  *Malley v.

Briggs*, 475 U.S. 335, 341 (1986); *see also Malsh v. Correctional Officer Austin*, 901 F. Supp.

757, 764 (S.D.N.Y. 1995) (citing cases); *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y.

1996).  As the Supreme Court explained,

> [T]he qualified immunity defense . . . provides ample protection to all
> but the plainly incompetent or those who knowingly violate the law.
> . . . Defendants will not be immune if, on an objective basis, it is
> obvious that no reasonably competent officer would have concluded
> that a warrant should issue; but if officers of reasonable competence
> could disagree on this issue, immunity should be recognized.

*Malley*, 475 U.S. At 341.  Furthermore, courts in the Second Circuit recognize that "the use of an

'objective reasonableness' standard permits qualified immunity claims to be decided as a matter

of law."  *Malsh*, 901 F. Supp. at 764 (citing *Cartier v. Lussier*, 955 F.2d 841, 844 [2d Cir. 1992]

[citing Supreme Court cases]).

Here, for the reasons stated above, no reasonable jury could conclude that it was

objectively unreasonable for Defendants Hartman and Ricks to believe that their actions did not

clearly violate an established federally protected right of plaintiff's.  Therefore, I recommend that

---

[25]     *See also Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d
Cir. 1993); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994).

[26]     *See Anderson v. Creighton*, 107 S.Ct. 3034, 3038 (1987) ("[W]hether an official
protected by qualified immunity may be held personally liable for an allegedly unlawful official
action generally turns on the 'objective reasonableness of the action.'") (quoting *Harlow*, 457
U.S. at 819); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects
defendants "even where the rights were clearly established, if it was objectively reasonable for
defendants to believe that their acts did not violate those rights").

summary judgment be granted to them on the ground of qualified immunity.  However, also for the reasons stated above, triable issues of fact exist with respect to whether it was objectively unreasonable for Defendant Hyde to believe that his denial of plaintiff's access to medical care did not clearly violate an established federally protected right of plaintiff's.  Therefore, I recommend that summary judgment be denied to him on the ground of qualified immunity.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 46) be **GRANTED** as to Defendants Hartman and Ricks, and **DENIED** as to Defendant Hyde; and that plaintiff's complaint be **PARTIALLY DISMISSED** accordingly.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); FED. R. CIV. P. 6(a), 6(e), 72.

Dated:  November 3, 2004
     Syracuse, New York

George H. Lowe
United States Magistrate Judge