**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DERRICK A. HOOVER,**

                              **Plaintiff,**


              **v.**                                    **9:99-CV-1855**
                                                        **(FJS/GHL)**

**S. HARDMAN, Dentist; J. RICKS, Superintendent;**
**and MR. HYDE, Correction Officer,**


                              **Defendants.[1]**

_____

**APPEARANCES**                          **OF COUNSEL**

**DERRICK A. HOOVER**
**86-A-6273**
Five Points Correctional Facility
State Route 96
P.O. Box 119
Romulus, New York 14541
Plaintiff _pro se_

**OFFICE OF THE NEW YORK**               **SENTA B. SIUDA, AAG**
**STATE ATTORNEY GENERAL**
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204-2455
Attorneys for Defendants

**SCULLIN, Chief Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

       On November 1, 1999, Plaintiff filed this action against Defendants, pursuant to 42

_____

       [1] Although Plaintiff's complaint names "S. Hardman" as the facility's dentist, his name is
actually "Stephen Hartman."  Likewise, although Plaintiff's complaint lists "J. Ricks" as the
facility's superintendent, his name is actually "Thomas Ricks."  The Court will use Defendants'
correct names throughout this Memorandum-Decision and Order.

U.S.C. § 1983, alleging that they were deliberately indifferent to his serious medical needs in connection with a broken tooth and a laceration inside his mouth that he sustained while incarcerated at Upstate Correctional Facility.  As a result of his injuries, Plaintiff seeks $100,000 in damages.

On September 24, 2003, Defendants filed a motion for summary judgment.  *See* Dkt. No. 46.  On November 3, 2004, Magistrate Judge Lowe issued a Report-Recommendation, in which he recommended that the Court grant Defendants' motion for summary judgment with regard to the claims against Defendants Hartman and Ricks and deny Defendants' motion with regard to the claims against Defendant Hyde.  *See* Dkt. No. 60.  Currently before the Court are Plaintiff's and Defendant Hyde's objections to those recommendations.  *See* Dkt. Nos. 64, 66.


## II. DISCUSSION

### A.      Standards of review

The Court reviews *de novo* those findings and recommendations in a magistrate judge's report-recommendation to which a party has filed timely objections and for clear error those parts of the report-recommendation to which a party does not object.  *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72; *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment when the moving party carries its burden of showing the absence of a genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the non-moving

party.  *See Morris v. Eversley*, 282 F. Supp. 2d 196, 201 (S.D.N.Y. 2003).  However, once the moving party has met its burden, the non-moving party must come forward with specific facts showing that there is a genuine issue of fact for trial.  *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

**B.**      **Exhaustion of administrative remedies**

The Prison Litigation Reform Act ("PLRA") requires that, before commencing a suit in federal court, a prisoner must first exhaust his available administrative remedies.  *See Marvin v. Goord*, 255 F.3d 40, 42 (2d Cir. 2001).  Within the New York State Department of Correctional Services ("DOCS"), there is a well-established three-step grievance process.  First, an inmate must file a complaint with the Grievance Clerk, at which point an inmate grievance resolution committee ("IGRC") representative has seven working days to resolve the issue informally.  If there is no resolution, the full IGRC conducts a hearing and documents its decision.  If the inmate receives an adverse decision, he may appeal that decision to the facility's superintendent, who also documents his decision.  Finally, if an inmate receives an adverse superintendent's decision, he may appeal to the Central Office Review Committee ("CORC"), which must render a decision within twenty working days of receiving the appeal and must also document its decision.  *See Hemphill v. New York*, 380 F.3d 680, 682 (2d Cir. 2004) (citations omitted).[2]

Generally, if a plaintiff fails to complete this three-step process prior to commencing his

---

[2] The Court notes that the "exhaustion of administrative remedies" is an affirmative defense that a defendant must raise in response to the plaintiff's claims.  *See Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004) (citation omitted).  If a defendant fails to raise this defense, he waives his ability to do so.  *See id.*

§ 1983 litigation, the court will conclude that he has not exhausted his administrative remedies. *See Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 347-48 (S.D.N.Y. 2002); *Reyes v. Punzal*, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002). However, the Second Circuit has held that a plaintiff may successfully refute a defendant's contention that he has failed to exhaust his administrative remedies if he can demonstrate that those remedies were "unavailable" to him or that "special circumstances" justify his failure to comply with this requirement. *See Hemphill*, 380 F.3d at 686 (citations omitted); *Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004); *Johnson*, 380 F.3d at 696-97; *Giano v. Goord*, 380 F.3d 670, 676, 679 (2d Cir. 2004).

To support his contention that Plaintiff failed to exhaust his administrative remedies with regard to the claims that he has asserted against him, Defendant Hyde argues that, in his only grievance, which was dated November 23, 1999, Plaintiff failed to mention him. In response, Plaintiff asserts that the Court should excuse him from complying with the exhaustion requirement because there was no working grievance process available at the then recently-opened Upstate Correctional Facility when he filed his grievance, and, in any event, he fulfilled the exhaustion requirement informally as section 7.11 of title 7 of the New York Codes, Rules and Regulations and *Marvin*, 255 F.3d at 43 n.3, permit.

Viewing all factual inferences in the light most favorable to Plaintiff, Magistrate Judge Lowe rejected Defendant Hyde's argument. He reasoned that Plaintiff's letter to the IGRC, dated September 23, 1999, in which he mentioned Defendant Hyde, supported Plaintiff's assertion that he exhausted his administrative remedies as to his claims against Defendant Hyde. Moreover, he concluded that Plaintiff's letter to Defendant Ricks, dated September 15, 1999, in which he demanded that Defendant Ricks reprimand Defendant Hyde further supports Plaintiff's claim. In

addition, Magistrate Judge Lowe considered Plaintiff's claims that he filed one or more grievances, in which he referenced Defendant Hyde, that were lost in the system as well as Plaintiff's sworn testimony and the sworn testimony of two fellow inmates that the IGRC had not operated adequately in the first few months after Upstate Correctional Facility began receiving prisoners in July 1999.

Magistrate Judge Lowe also found that Plaintiff's evidence was consistent with the lack of any record evidence that an Inmate Grievance Program representative investigated, or even filed, Plaintiff's September 27, 1999 grievance or that the IGRC held a hearing within seven days as section 701.7(a) of title 7 of New York Codes, Rules and Regulations requires.  In addition, he concluded that these failures in the grievance procedures caused Plaintiff to appeal by letter directly to Defendant Ricks on September 30, 1999.  Although Plaintiff did not expressly refer to Defendant Hyde in that letter, did not send that letter before the seven days for doing so had run, and did not subsequently appeal to CORC, Magistrate Judge Lowe found that Defendant Hyde had failed to meet his burden to prove that Plaintiff had not exhausted his administrative remedies, especially in light of the reasonableness of Plaintiff's repeated attempts to pursue those remedies, as well as the newness of the Upstate Correctional Facility and the alleged failures of its grievance process at that time.  Therefore, Magistrate Judge Lowe found that Plaintiff had raised an issue of fact regarding whether he had exhausted his administrative remedies with respect to his claims against Defendant Hyde.  Accordingly, he recommended that the Court deny Defendants' motion for summary judgment on this ground.

Defendant Hyde's only objection to this recommendation is that Magistrate Judge Lowe did not properly apply the recent Second Circuit decisions regarding exhaustion of administrative

remedies, all of which the Second Circuit decided after the parties had submitted their summary judgment papers, to the facts of this case.

In its most recent pronouncements on the PLRA's exhaustion of administrative remedies requirement, the Second Circuit established a three-part inquiry in cases in which an inmate seeks to counter a defendant's contention that the inmate failed to exhaust his administrative remedies. *See Hemphill*, 380 F.3d at 686. In this regard, although the court depends on the inmate's explanation for his alleged failure to exhaust, it must also ask whether administrative remedies were, in fact available to the inmate. *See id.* (citing *Abney v. McGinnis*, 380 F.3d 663, 2004 WL 1842647). If the court determines that administrative remedies were available to the inmate but that nonetheless the inmate did not exhaust those remedies, the court must then consider whether special circumstances justify the inmate's failure to comply with the exhaustion requirements. *See id.* (citing *Giano v. Goord*, 380 F.3d at 670, 2004 WL 1842652 (citing *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2003); Rodriguez order)).

In support of his recommendation, Magistrate Judge Lowe referred to several of Plaintiff's claims, which, if true, support his assertion that he attempted to exhaust his administrative remedies. Moreover, applying the relevant case law to Plaintiff's evidence, the Court agrees with Magistrate Judge Lowe that it is unclear whether there were administrative remedies available to Plaintiff because of the alleged problems with the grievance procedures at Upstate Correctional Facility at the time that Plaintiff attempted to file his complaints. Alternatively, even if the Court were to conclude that administrative remedies were available to Plaintiff, it is at least arguable that special circumstances existed to justify his failure to comply

-6-

with these requirements.[3]  Therefore, based upon Plaintiff's numerous attempts to pursue his

administrative remedies and the problems with the grievance procedures at Upstate Correctional

Facility during the relevant period, the Court agrees with Magistrate Judge Lowe's findings that,

at the very least, Plaintiff has raised an issue of fact with regard to the issue of whether he

exhausted his administrative remedies with respect to his claims against Defendant Hyde.

Accordingly, the Court adopts Magistrate Judge Lowe's recommendation and denies Defendants'

motion for summary judgment on this ground.

**C.      Defendants Hyde's and Rick's personal involvement in the alleged violations of
         Plaintiff's constitutional rights**

A prerequisite to a finding of liability for money damages in a § 1983 action is a

defendant's personal involvement in the alleged constitutional violation.  *See Blyden v. Mancusi*,

186 F.3d 252, 264 (2d Cir. 1999).  The standards for determining what constitutes personal

involvement differ depending upon whether the defendant is a supervisory official or not.

> The personal involvement of a supervisory defendant may be
> shown by evidence that: (1) the defendant participated directly in
> the alleged constitutional violation, (2) the defendant, after being
> informed of the violation through a report or appeal, failed to
> remedy the wrong, (3) the defendant created a policy or custom
> under which unconstitutional practices occurred, or allowed the
> continuance of such a policy or custom, (4) the defendant was
> grossly negligent in supervising subordinates who committed the
> wrongful acts, or (5) the defendant exhibited deliberate
> indifference to the rights of inmates by failing to act on information
> indicating that unconstitutional acts were occurring.

---

[3] Special circumstances include a plaintiff's reasonable confusion regarding the grievance
process, *see Johnson*, 380 F.3d at 696-97, and a plaintiff's reasonable belief that he was pursuing
his only available administrative remedies, *see Giano*, 380 F.3d at 676, 679.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[4]

However, the fact that a supervisory prison official is in a high position of authority, standing alone, is an insufficient basis for finding personal involvement. *See McKinnon*, 568 F.2d at 934 (citation omitted). Thus, a supervisor is not personally involved in an alleged constitutional violation simply because of the actions of his subordinates, *see Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987), nor does his receipt of letters regarding an alleged constitutional violation constitute personal involvement on his part, *see Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997).

On the other hand, unlike a supervisor, subordinate officials, such as correctional officers, are personally involved in the violation of an inmate's constitutional rights only if they directly participate in that violation. *See Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986). Thus, when an inmate alleges that non-medical subordinate prison personnel were deliberately indifferent to his serious medical needs, he must demonstrate that they "'intentionally delayed

---

[4] For purposes of § 1983, "gross negligence" is defined as "'[a] conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party . . . .'" *Rivers v. O'Brien*, 83 F. Supp. 2d 328, 334 (N.D.N.Y. 2000) (quoting Black's Law Dictionary (7th ed. 1999)). In the same context,

> [d]eliberate indifference may be shown by evidence . . . [of] reckless disregard for the substantial risk posed by the . . . serious medical condition. Thus, in order to establish deliberate indifference, a plaintiff must show "something more than mere negligence" but proof of intent is not required, for the deliberate-indifference standard "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."

*McAllister v. N.Y. City Police Dep't*, 49 F. Supp. 2d 688, 701 (S.D.N.Y. 1999) (quoting *Weyant v. Okst*, 101 F.3d at 856) (other citations omitted).

access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.'"  *Baumann v. Walsh*, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999) (quoting *Hodge v. Coughlin*, No. 92 Civ. 0622, 1994 WL 519902, at 11 (S.D.N.Y. Sept. 22, 1994), *aff'd* 52 F.3d 310 (2d Cir. 1995) (table)) (other citations omitted).

### 1. Defendant Ricks

With regard to Plaintiff's claims against Defendant Ricks, Magistrate Judge Lowe found that, even when viewing all inferences and ambiguities most favorably to Plaintiff, there was no evidence that Defendant Ricks was personally involved in the alleged violation of Plaintiff's constitutional rights.  Specifically, he found that there was no evidence that Defendant Ricks directly participated in the alleged violation, failed to remedy the alleged violation, was grossly negligent or exhibited deliberate indifference to Plaintiff's rights.  Accordingly, Magistrate Judge Lowe recommended that this Court grant Defendants' motion for summary judgment with respect to Plaintiff's claims against Defendant Ricks.

Plaintiff objects, claiming that, despite Magistrate Judge Lowe's conclusion to the contrary, there is sufficient documentation, including at least three letters that he sent to Defendant Ricks, to support a finding that Defendant Ricks violated his constitutional rights.

Even accepting as true Plaintiff's assertion that he sent three letters to Defendant Ricks regarding his complaints of deliberate indifference, as noted above, receiving such letters is not sufficient to establish the personal involvement of a supervisory official.  *See Sealey*, 116 F.3d at 51.  Moreover, Plaintiff has not pointed to any other evidence that would permit the Court to find that Defendant Ricks was personally involved in the alleged violation of his constitutional

-9-

rights.  Accordingly, the Court adopts Magistrate Judge Lowe's recommendation and grants

Defendants' motion for summary judgment with respect to Plaintiff's claims against Defendant

Ricks for lack of personal involvement.


### 2. Defendant Hyde

In his analysis of Defendant Hyde's argument, Magistrate Judge Lowe noted that, unlike a

supervisory official, "the level of knowledge necessary for a prison guard's personal involvement

appears to be mere awareness that plaintiff was in need of 'medical assistance.'"  *See* Report-

Recommendation at 16 (citing *MacAllister v. New York City Police Department*, 49 F. Supp. 2d

688, 701 (S.D.N.Y. 1999) (concluding that three police officers had no personal involvement in

alleged denial of plaintiff's medical treatment because they "were [n]ever made aware that

[plaintiff] was in need of medical assistance.").[5]  Moreover, he concluded that, whether or not

this was the appropriate standard, Defendant Hyde acknowledged that "'[a]mong my duties at the

time [I was a block officer assigned to the block where plaintiff was housed] was to escort

medical and dental personnel through the block to the cells of inmates who had requested

medical or dental services.'"  *See* Report-Recommendation at 17 (citing Dkt. No. 50, ¶ 3).  He

also noted that, during the fall of 1999, representatives of the Health Clinic visited plaintiff seven

---

[5] Magistrate Judge Lowe distinguished *Baumann*, upon which Defendant Hyde relies for the proposition that to be personally involved in any allegations of deliberate indifference to a serious medical need, a subordinate officer had to "intentionally delay[] access to medical care when the inmate was in extreme pain and ha[d] made his medical problem known to [the prison official]," finding that "*Baumann* does not appear to support defendants' position because that case considered intent and knowledge in discussing whether a prison shop *supervisor* acted with *deliberate indifference* (not whether a *prison guard* was *personally involved* in the alleged unlawful conduct)."  *See* Report-Recommendation at 16.

times regarding his dental condition.  *See id.* (citing Dkt. No. 48, Ex. E at 812; Dkt. No. 51, Ex.

E at 3-4; Dkt. No. 55, Ex. K at 7, 10-11, 15-16).  In addition, he noted that Plaintiff had asserted,

under oath, that Defendant Hyde instructed a nurse from the Health Clinic not to see Plaintiff on

or about September 13, 1999, and not to dispense medication to him on or about September 14,

1999.  *See id.* (citing Dkt. No. 55, Ex. A, ¶¶ 6-8).  Based upon this evidence and drawing all

inferences and ambiguities in the light most favorable to Plaintiff, Magistrate Judge Lowe found

that Plaintiff had raised triable issues of fact as to whether Defendant Hyde was personally

involved in the alleged violation of Plaintiff's constitutional rights.  *See id.*  Accordingly, he

recommended that the Court deny Defendants' motion for summary judgment on this ground.

Defendant Hyde objects to this recommendation, claiming that *McAllister v. N.Y. City*

*Police Dep't*, 49 F. Supp. 2d 688 (S.D.N.Y. 1999), upon which Magistrate Judge Lowe relied to

define the appropriate level of conduct necessary to sustain a claim of personal involvement on

the part of a non-supervisory officer, is distinguishable because it involved a pretrial detainee, not

a convicted inmate, and thus the court in that case analyzed the plaintiff's claim under the due

process clause of the Fourteenth Amendment, rather than the Eighth Amendment, which applies

to this case.  Alternatively, Defendant Hyde contends that, even if the Court were to apply the

*McAllister* standard, Plaintiff did not allege sufficient personal involvement on his part.

Although Defendant Hyde correctly identifies the factors that distinguish the situation in

*McAllister* from the one present in this case, this does not affect Magistrate Judge Lowe's

ultimate conclusion.[6]  In *Baumann*, which was a case factually similar to the present one, this

_____

[6] Moreover, the Court notes that even a cursory review of Magistrate Judge Lowe's
analysis of this claim indicates that he would have reached the same conclusion whether or not
(continued...)

Court set forth the correct standard that courts in this circuit must apply in all Eighth Amendment deliberate indifference claims: "[n]on-medical prison personnel engage in deliberate indifference where they 'intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.'" *Baumann*, 36 F. Supp. 2d at 512 (quotation and other citation omitted).

In this case, as Magistrate Judge Lowe noted, Defendant Hyde concedes that, among his duties at the time of the alleged incident, was to escort medical and dental personnel to the cells of inmates who had requested medical or dental services. Plaintiff also asserts that he heard Defendant Hyde tell one of the nurses not to see him and not to give him any medication. Applying the *Baumann* standard to this evidence, and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has established an issue of fact regarding whether Defendant Hyde's conduct is sufficient to establish that he was personally involved in the alleged violation of Plaintiff's constitutional rights; i.e., that he intentionally delayed Plaintiff's access to medical care with the knowledge that Plaintiff was in extreme pain. Accordingly, the Court adopts Magistrate Judge Lowe's recommendation and denies Defendants' motion for summary judgment with regard to the issue of Defendant Hyde's personal involvement.

**D.      Deliberate indifference to a serious medical need**

---

[6](...continued)
the *McAllister* standard applied to this case because Plaintiff had pointed to other evidence in the record that was sufficient to create an issue of fact as to whether Defendant Hyde was personally involved in the alleged violation of his constitutional rights. *See* Report-Recommendation at 16-17.

### 1. Serious medical need

To establish an unconstitutional denial of dental care, a plaintiff must prove that the defendant was deliberately indifferent to a serious dental need. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "The deliberate indifference standard embodies both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'" *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed. 2d 271 (1991)) (other citation omitted). In other words, the alleged conduct must be "'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 106 (quotation omitted). However, "[s]o long as the treatment . . . is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (citation omitted).

"Second, the charged official must act with a sufficiently culpable state of mind." *Hathaway*, 37 F.3d at 66 (citing *Wilson*, 501 U.S. at 298, 111 S. Ct. at 2324). "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Id.* (citation omitted). "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quotation omitted).

"A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quotation omitted). The condition must also be one

-13-

"'of urgency, one that may produce death, degeneration, or extreme pain.'" *Hathaway*, 37 F.3d at 66 (quotation omitted).  Specifically, in the context of a dental problem, a plaintiff can base his claim "on various factors, such as the pain [he] suffered . . . the deterioration of [his] teeth due to a lack of treatment . . . or [his] inability to engage in normal activities, . . ." *Chance*, 143 F.3d at 703 (internal citations omitted).  Moreover, the Second Circuit has held that "dental conditions . . . vary in severity and that a decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case." *Harrison*, 219 F.3d at 136-37.  "Ordinarily, a tooth cavity is not a serious medical condition, but that is at least in part because a cavity is so easily treatable." *Id.* at 137.  However, "because a tooth cavity will degenerate with increasingly serious implications if neglected over sufficient time, it presents a 'serious medical need' within the meaning of our case law." *Id.* (citing *Chance*, 143 F.3d at 702-03).

Based upon Plaintiff's medically-diagnosed need for a filling, as well as evidence of cold sensitivity, some pain, and difficulty eating, Magistrate Judge Lowe determined that Plaintiff had raised an issue of fact regarding whether his dental condition constituted a serious medical need.  Accordingly, he recommended that this Court deny Defendants' motion for summary judgment with regard to this issue.

On August 6, 1999, Plaintiff lost a filling in his upper front right tooth and sustained a cut on his lower gum.  Plaintiff alleges that these injuries went untreated and that, as a result, he experienced headaches, infections, discoloration of the eyes, pain, and the inability to eat properly.  He also claims that these injuries were so urgent that he had to be transferred to an outside facility so that a specialist could examine him.

Defendant Hyde objects to Magistrate Judge Lowe's recommendation, asserting that

-14-

Plaintiff's claim of a serious medical need is without support in the record.  In addition, he contends that Plaintiff's lost filling does not meet the definition of a "serious medical need."  *See* Defendant Hyde's Objections, Dkt. No. 64, at 10 (citing *Martin v. Tyson*, 845 F.2d 1451, 1457-58 (7th Cir. 1988), *cert. denied*, 488 U.S. 863 (1988)).  Specifically, with regard to Plaintiff's complaints of headaches, eye discoloration and infections, Defendant Hyde asserts that Plaintiff has not come forward with any evidence concerning the dates, duration or severity of his headaches, the source or precise dates of his eye discoloration, or the location, source, or dates of his infections.  Furthermore, regarding Plaintiff's claim that he was unable to eat properly, Defendant Hyde contends that Plaintiff has offered no evidence other than the affidavit of his cellmate, Raul Marrero, who swears that since the time that he arrived at Plaintiff's cell on November 16, 1999, Plaintiff gave him his meals because Plaintiff had a broken tooth.

Although the Court is somewhat skeptical that ultimately the facts that Plaintiff presents in support of this claim  may prove persuasive at trial, drawing all reasonable inferences in Plaintiff's favor, the Court concludes that they are sufficient to raise an issue of fact as to whether Plaintiff's dental problems constitute a serious medical need.  Accordingly, the Court adopts Magistrate Judge Lowe's recommendation and denies Defendants' motion for summary judgment with regard to this issue.[7]

---

[7] The Court notes that Defendant Hyde's reliance upon the Seventh Circuit's decision in *Martin v. Tyson*, 845 F.2d 1451, 1457-58 (7th Cir. 1988), to support the proposition that a lost filling does not meet the definition of a serious medical need is misplaced.  *Martin* not only is not binding on this Court but it is factually and legally distinguishable in part because it involved the dental complaint of a pretrial detainee, which, as noted above, a court analyzes under the due process clause of the Fourteenth Amendment, rather than under the Eighth Amendment.

### 2. Deliberate indifference

"To establish deliberate indifference, the plaintiff must prove that 'the prison official knew of and disregarded the plaintiff's serious medical needs.'" *Harrison*, 219 F.3d at 137 (quoting *Chance*, 143 F.3d at 703 (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). "Deliberate indifference . . . exist[s] when an official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Id.* (quotation and other citation omitted). Additionally, "the State is not constitutionally obligated . . . to construct a perfect plan for dental care that exceeds what the average reasonable person would expect or avail [him]self of in life outside the prison walls." *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) (holding that "[w]e are governed by the principle that the objective is not to impose upon a state prison a model system of dental care beyond the average needs but to 'provide the minimum level of [dental] care required by the Constitution.'" (quotation omitted)).

### a. Defendant Hartman

Magistrate Judge Lowe found that there was no evidence that any delay in treatment that Defendant Hartman caused rose to a level equivalent to criminal recklessness. Although Defendant Hartman knew that Plaintiff needed a filling, his delay in getting Plaintiff assistance to replace that filling did not amount to knowledge of and disregard of an excessive risk to Plaintiff's health or safety. Thus, even when drawing all inferences and ambiguities most favorably to Plaintiff, Magistrate Judge Lowe concluded that there was no evidence that Defendant Hartman was deliberately indifferent to Plaintiff's medical needs. Accordingly, he

recommended that this Court grant Defendants' motion for summary judgment with respect to Plaintiff's deliberate indifference claims against Defendant Hartman.

Plaintiff objects to this recommendation, arguing that Defendant Hartman deliberately participated in a four-month plan to delay providing treatment or providing him with any type of medication to help his pain and that, in addition, Defendant Hartman disregarded his injuries, thus establishing his culpable state of mind.

Despite Plaintiff's assertions to the contrary, even if the Court assumed that Defendant Hartman delayed Plaintiff's treatment to some extent, there is no evidence that any such delay was sufficient to warrant a finding of deliberate indifference.  Specifically, there is no evidence that Defendant Hartman knew about Plaintiff's difficulty eating or that his treatment of Plaintiff deviated from reasonable medical practices.  In addition, other health care providers saw Plaintiff regarding his complaints during this entire period.  As Magistrate Judge Lowe noted, any delays that Plaintiff experienced are common to those that are involved in scheduling dental appointments outside of prison.  Accordingly, in light of the lack of proof that Defendant Hartman delayed Plaintiff's treatment to any more than a *de minimis* level, the Court adopts Magistrate Judge Lowe's recommendation and grants Defendants' motion for summary judgment with regard to Plaintiff's claim of deliberate indifference against Defendant Hartman.[8]

### c. Defendant Hyde

---

[8] Since the Court has already determined that Plaintiff has come forward with no evidence that Defendant Ricks was personally involved in the alleged violation of his constitutional rights, it need not address Magistrate Judge Lowe's alternative ground for recommending that the Court dismiss Plaintiff's claims against Defendant Ricks; i.e., that there is no evidence that Defendant Ricks was deliberately indifferent to Plaintiff's medical needs.

As previously noted, to hold that non-medical prison personnel were deliberately indifferent to a plaintiff's serous medical needs, a plaintiff must show that they "'intentionally delayed access to medical care when the inmate was in extreme pain and ha[d] made his medical problem known to the attendant prison personnel.'" *Baumann*, 36 F. Supp. 2d at 512 (quotation and other citation omitted).

Applying this standard to the evidence in the record, Magistrate Judge Lowe concluded that Plaintiff had raised a triable issue of fact as to whether Defendant Hyde was deliberately indifferent to his serious medical needs. After distinguishing the cases upon which Defendant Hyde relied to support his position because they did not involve the sort of pain that Plaintiff allegedly experienced, Magistrate Judge Lowe found that the length of the delay, as well as his instructions to medical personnel not to see Plaintiff and not to provide him with medication, was sufficient to raise a triable issue of fact regarding whether Defendant Hyde was deliberately indifferent to Plaintiff's medical needs. Therefore, he recommended that the Court deny Defendants' motion for summary judgment with respect to Plaintiff's deliberate indifference claims against Defendant Hyde.

Defendant Hyde objects to this recommendation, arguing that Plaintiff cannot demonstrate that he knew of his dental problem and, therefore, he cannot meet the standard set forth in *Baumann*. Alternatively, he asserts that his alleged interference with Plaintiff's access to dental care was, at best, *de minimis* and, thus, does not rise to the level of a Constitutional violation.

Plaintiff alleged that, on or about September 13, 1999, Defendant Hyde instructed a nurse not to see him and that, approximately one day later, he instructed the same nurse not to provide

-18-

medication to him.  Approximately one week after these incidents allegedly occurred, Defendant

Hartman did see Plaintiff, diagnosed his problem, and scheduled an operation.  Although

Defendant Hyde argues that such a delay is *de minimis*, and, thus, does not rise to the level of a

constitutional violation, it is the trier of fact that should determine whether the length of the delay

and the level of pain that Plaintiff alleges, in light of all the circumstances, are sufficient to rise to

the level of a constitutional violation, not this Court on a motion for summary judgment.  *See,*

*e.g., Harrison v. Barkley*, 219 F.3d 132 (2d Cir. 2000); *Dean v. Coughlin*, 623 F. Supp. 392

(S.D.N.Y. 1985).  Accordingly, the Court adopts Magistrate Judge Lowe's recommendation and

denies Defendants' motion for summary judgment regarding Plaintiffs' claims of deliberate

indifference against Defendant Hyde.


**D.     Qualified immunity**[9]

        If a defendant pleads the affirmative defense of qualified immunity, the court must

dismiss the plaintiff's complaint "unless [the] defendant's alleged conduct, when committed,

violated 'clearly established statutory or constitutional rights of which a reasonable person would

have known.'"  *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir. 1986) (quotation and other citation

omitted).  To determine whether a right was "clearly established," the court should consider three

factors:

>           (1) whether the right in question was defined with "reasonable
>           specificity"; (2) whether the decisional law of the Supreme Court
>           and the applicable circuit court support the existence of the right in
>           question; and (3) whether under preexisting law a reasonable

---

        [9] In light of the Court's previous rulings regarding the merits of Plaintiff's claims, it need
address the issue of qualified immunity only with regard to Defendant Hyde.

defendant official would have understood that his or her acts were
unlawful."

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citation omitted).

When determining whether a reasonable person would have known that he was violating
a clearly established right, the test is an objective one and is met if "officers of reasonable
competence could disagree. . . ." *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (finding that "if
officers of reasonable competence could disagree on this issue, immunity should be recognized").

Magistrate Judge Lowe found that the evidence in the record was sufficient to support a
finding that Plaintiff had raised a triable issue of fact with regard to "whether it was objectively
unreasonable for Defendant Hyde to believe that his denial of Plaintiff's access to medical care
did not clearly violate an established federally protected right . . . ." *See* Report-
Recommendation at 28.  Therefore, he recommended that the Court deny Defendants' motion for
summary judgment with respect to Plaintiff's claims against Defendant Hyde on this ground.

Defendant Hyde objects to this recommendation, arguing that it is internally inconsistent
with Magistrate Judge Lowe's reliance upon cases in which a delay in access to medical care
alleged to have been caused by non-medical personnel is *de minimis* and does not rise to the level
of a Constitutional violation.  Defendant Hyde also asserts that Magistrate Judge Lowe cited no
controlling cases from the Supreme Court or the Second Circuit that have held that inmates have
a clearly established right to be free from an approximately twenty-four-hour delay in receiving
dental treatment, which is what occurred in this case.  Therefore, Defendant Hyde contends that
he is entitled to qualified immunity.

If the trier of fact were to determine that Plaintiff's complaints constituted a serious

medical need and that Defendant Hyde was deliberately indifferent to this need, then it could not

be said that an objectively reasonable prison official could have believed that his alleged denial

of Plaintiff's access to dental care – even for a *de minimis* amount of time – did not violate a

clearly established right.  Therefore, although the Court has some serious reservations about

whether a jury will ultimately find in Plaintiff's favor with regard to these issues, drawing all

reasonable inferences in Plaintiff's favor, the Court concludes that Defendant Hyde is not entitled

to qualified immunity.  Accordingly, the Court adopts Magistrate Judge Lowe's recommendation

and denies Defendants' motion for summary judgment with respect to this issue.


### III. CONCLUSION

After carefully considering Magistrate Lowe's Report-Recommendation, Plaintiff's and

Defendant Hyde's objections thereto, the relevant parts of the record, and the applicable law, and

for the reasons stated in the Report-Recommendation as well as those stated herein, the Court

hereby

**ORDERS** that Magistrate Judge Lowe's Report-Recommendation, dated November 3,

2004, is **ADOPTED IN ITS ENTIRETY**; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to

Plaintiff's claims against Defendants Hartman and Ricks; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED** with respect to

Plaintiff's claims against Defendant Hyde; and the Court further

**ORDERS** that the parties contact Magistrate Judge Lowe's chambers within **ten days** of the date of the filing of this Order to schedule a final pretrial conference.

**IT IS SO ORDERED.**

Dated: August 15, 2005
        Syracuse, New York

Frederick J. Scullin, Jr.
Chief United States District Court Judge